# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDUARDO RALPH JUNQUEIRA,<br>*Petitioner,*<br><br>v.<br><br>STEVE SOUZA, *et. al..*<br>*Respondents.* | Civil Action No. 1:18-cv-10307-MLW<br><br>**RESPONDENTS' OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS, MOTION TO DISMISS, AND MEMORANDUM IN SUPPORT THEREOF** |

I.     **INTRODUCTION**

Petitioner, Eduardo Ralph Junqueira ("Junqueira" or "Petitioner") is a citizen of Brazil who is subject to a final order of removal. ECF No. 1 ("Pet.") at ¶¶18, 20; Exhibit 3, Form I-871. After he was ordered removed in July 2004, Petitioner departed the United States. Pet. at ¶ 20. Shortly thereafter, in November 2004, Petitioner re-entered the United States without inspection. *Id.* at ¶ 21. ICE reinstated that 2004 order of removal on February 1, 2018, and detained him to effectuate removal.[1] *See* Ex. 3;

Junqueira brings this action seeking release or, in alternative, a bond hearing in front of a neutral magistrate. Pet. at ¶¶ 8-9. Petitioner claims that his detention violates the Immigration and Nationality Act ("INA") and applicable regulations and the Fifth Amendment. *Id.* at ¶¶ 41-44.

The Petition should be dismissed on three grounds. First, as the First Circuit has routinely held, 8 U.S.C. § 1252(g) bars jurisdiction to consider habeas petitions, like this one, which undeniably arise from DHS's execution of a removal order. Any challenge that Petitioner seeks to launch against his final order of removal must be brought in a court of appeals via a petition for review—not in this district court.

Second, apart from the threshold jurisdictional issues, Petitioner's removal would not violate the INA, any applicable regulations, or the Fifth Amendment. Petitioner is plainly ineligible for any of the relief from removal to which he purports that he is entitled, and he fails to identify any cognizable due process interest that would sustain a Fifth Amendment claim.

---

[1] Petitioner's order of removal was reinstated on February 1, 2018, pursuant to 8 U.S.C. § 1231(a)(5), which provides: "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the re-entry." *See also* 8 U.S.C. § 1231(a)(1)(B) (stating when the removal period begins).

1

Third, Petitioner's challenge to his detention is premature. His detention, totaling far less than six months, is presumptively lawful and reasonable under the Supreme Court's decision in *Zadvydas*, and Petitioner cannot show that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner, therefore, is not entitled to the procedures in 8 C.F.R. § 241.4(d), (f), (h), and (k) because those procedures do not apply to aliens before they are detained or to aliens detained less than ninety days. Nor is he entitled to a bond hearing under the INA or applicable regulations. For all of these reasons, this Court should dismiss the Petition in its entirety.

## II.   STATEMENT OF THE FACTS

Junqueira is a citizen of Brazil who entered the United States without inspection in June 2004. Pet. at ¶¶ 18, 20. In July 2004, an immigration judge ordered Petitioner removed from the United States and Petitioner subsequently departed the United States under the authority of that removal order. *Id.* at ¶¶ 20-21. Petitioner re-entered the United States, without admission or parole by an immigration officer, in November 2004 and has lived in the country since then. *Id.* at ¶ 22.

Petitioner is the beneficiary of a Form I-130, Petition for Alien Relative, filed on his behalf by his U.S. citizen wife. *Id.* at ¶ 21. On February 1, 2018, ICE officers arrested Junqueira and detained him at the Bristol County House of Corrections, where he currently remains. *Id.* at ¶¶ 6-7. On February 27, 2018, this Court adopted the parties' briefing schedule and ordered Respondents to file a motion to dismiss, by March 27, 2018. ECF No. 21 at ¶ 1. On March 20, 2018, this Court adopted the parties' proposed briefing schedule and ordered Respondents to file their motion to dismiss by April 6, 2018.

## III.   ARGUMENT

**A. The Court should dismiss the Petition under 8 U.S.C. § 1252.**

The claims in Junqueira's Petition challenging his detention are precluded by 8 U.S.C. § 1252(g). Congress enacted the REAL ID Act in 2005. *See* Pub. L. No. 119-13, Div. B, 119 Stat. 302 (May 11, 2005). The REAL ID Act added jurisdiction-stripping provisions to the INA that speak directly to the availability of habeas corpus relief for aliens. *See Ishak v. Gonzales*, 422 F.3d 22, 29 (1st Cir. 2005). Importantly, the REAL ID Act amended 8 U.S.C. § 1252(g) to make clear that it "definitively eliminated any provision for [habeas] jurisdiction." *Id.* As amended by the REAL ID Act, 8 U.S.C. § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law, (statutory or nonstatutory), *including section 2241 of Title 28, or any other habeas corpus provision* . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). Thus, Congress unequivocally protected the government's authority to make "discretionary determinations" over whether and when to execute a removal order. *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471, 485 (1999).

Additionally, the REAL ID Act establishes a specific statutory mechanism that expressly channels all claims relating to removal proceedings into a petition for review before the appropriate circuit court of appeals, after the alien has completed the administrative removal process and is subject to a final order of removal. Specifically, 8 U.S.C. § 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter *shall be available only in judicial review of a final order under this section*. Except as otherwise provided in this section, *no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision*, by section 1361 or 1651 of such title, or by any other provision

3

of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added).

Section 1252(a)(2)(D) of the INA further clarifies that nothing in the Act "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section," making clear that an alien may raise legal claims in the court of appeals as part of the petition for review process. *See generally Aguilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 9-12 (1st Cir. 2007) (explaining that "Congress's purpose in enacting section 1252(b)(9) … is to consolidate and channel review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals"); *accord* H.R. Rep. No. 109-72, at 174 ("by channeling review to the courts of appeals, section 106 will eliminate the problems of bifurcated and piecemeal litigation."); *see also* 8 U.S.C. § 1252(a)(5) ("Notwithstanding any other provision of law (statutory or nonstatutory) . . . or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . ."). Section 1252(b)(9)'s "expanse is breathtaking" and is "not limited to challenges to singular orders of removal or to removal proceedings simpliciter." *Aguilar*, 510 F.3d at 9. Consequently, allowing Petitioner's habeas petition to move forward in this Court—when Congress has provided ample administrative remedies, as well as a petition for review process—would "belie[] the statute's plain meaning and run[] contrary to Congress's discernible intent." *Id.*

4

Here, Petitioner requests that the Court intervene in ICE's decision to *execute* his removal order, entered over a decade ago and reinstated, which is explicitly prohibited by section 1252(g) and Supreme Court precedent. *See* Pet. at ¶ 1. Section 1252(g) expressly prohibits judicial review of the "decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *AADC*, 525 U.S. 482 (emphasis in original); *see also Foster v. Townsley*, 243 F.3d 210, 214 (5th Cir. 2001) (holding the district court had no jurisdiction to review DHS's execution of a removal order that was contrary to an automatic stay); *Tejada v. Cabral*, 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—*be they stays or permanent injunctions*—were to be issued by the appropriate court of appeals.") (emphasis added); *Cf. Aziz v. Chadbourne,* 2007 WL 3024010, *2 (D. Mass. Oct. 15, 2007) (acknowledging that 8 U.S.C. § 1252(g) bars granting of any stay of removal for alien admitted under Visa Waiver Program who had pending adjustment application). Accordingly, this Court should dismiss Junqueira's Petition, which does nothing other than challenge DHS's execution of his removal order and, ultimately, seek to stay his removal.

**B. Junqueira's Petition does not establish that his removal would violate the INA and applicable regulations or the Fifth Amendment.**

Petitioner is not entitled to remain in the United States while he attempts "to regularize his immigration status." Pet. at ¶¶ 30-34. As an initial matter, the First Circuit has foreclosed the ability of reinstated aliens from pursuing adjustment of status. *Lattab v. Ashcroft,* 384 F.3d 8 (1st Cir. 2004). "[INA] section 241(a)(5) [8 U.S.C. § 1231(a)(5)] subjects an illegal re-entrant to three independent consequences: reinstatement of the prior deportation order, *ineligibility for any relief*, and removal." *Id.* at 16 (emphasis added). An alien, who is otherwise eligible for adjustment, is "squarely foreclosed by the text of the statute" from obtaining such relief. *Id.* Therefore, even if

5

Petitioner were facially eligible for some form of relief, his reinstated order of removal precludes him from "regularizing his immigration status." *See* Pet. at ¶¶ 30-34; *id.*

To the extent Petitioner requests a stay of removal based on alleged Fifth Amendment violations, jurisdiction to order such relief is reserved to the proper Court of Appeals. 8 U.S.C. § 1252(b)(9). Even assuming this Court has jurisdiction to order the requested relief, Junqueira is not facially eligible to apply for the relief from removal identified in the Petition. Moreover, Junqueira has no due process right to attempt to "regularize his immigration status" within the United States.

    i.    <u>Junqueira is ineligible to seek an unlawful presence waiver from within the United States because he must first remain outside the United States for ten years and obtain a Form I-212 waiver from outside the United States.</u>

Petitioner's entire argument is predicated on his belief that he is eligible to apply for an unlawful presence waiver (Form I-601A) that will allow him to "briefly travel to his [] home country to attend an interview overseas and complete the process of becoming a lawful permanent resident." Pet. at ¶ 29. However, Petitioner is statutorily ineligible to complete such process and instead must remain outside the United States for ten years before lawfully immigrating to the United States. *See* 8 U.S.C. § 1182(a)(9)(C).

An alien is inadmissible under section 1182(a)(9)(C)(i)(II) if the alien was previously removed and enters or attempts to re-enter the United States without being admitted. 8 U.S.C. § 1182(a)(9)(C)(i)(II). An alien may only avoid this ground of inadmissibility by (1) remaining outside the United States for more than *ten years* after the alien's last departure from the United States; **and** (2) **prior to** returning to the United States, gets permission to be admitted, via a Form I-212, Application for Permission to Reapply to the United States After Deportation or Removal. 8 U.S.C. § 1182(a)(9)(C)(ii); 8 C.F.R. § 212.2. After **both** of these steps are completed, an alien

who lived in the United States unlawfully for more than a year must file an unlawful presence waiver on a Form I-601, from outside the United States. 8 U.S.C. § 1182(a)(9)(B); 8 C.F.R. § 212.7 (describing procedures for Form I-601). In short, an alien who is inadmissible under 8 U.S.C. § 1182(a)(9)(C) may not apply for an unlawful presence waiver from within the United States. *See id.*

Petitioner is inadmissible under 8 U.S.C. § 1182(a)(9)(C) because he was previously removed in July 2004 and then re-entered the United States without admission or parole in November 2004. *See* Pet. at ¶¶ 20-22; 8 U.S.C. § 1182(a)(9)(C)(i)(II). He is not eligible to "regularize his status" and become a permanent resident because he has not remained outside the United States for ten years; nor has he been given permission to reapply via a Form I-212. 8 U.S.C. § 1182(a)(9)(C)(ii); 8 C.F.R. § 212.2. Contrary to Petitioner's belief, he is statutorily ineligible to apply for a Form I-601A, unlawful presence waiver, because he has failed to complete these two required steps. *See id.*; *see also* Exhibit 1, Instruction for Form I-212 (instructing that aliens inadmissible under 8 U.S.C. § 1182(a)(9)(C) cannot file this application until they have remained outside the United States for ten years ); Exhibit 2, Instructions for Form I-601A (listing aliens not eligible to file a Form I-601A).

    ii.    <u>Junqueira is not eligible to adjust under Section 1255(i).</u>

Petitioner's claim that he is eligible to adjust his status pursuant to section 1255(i) is likewise meritless. *See* Pet. at ¶ 33. Under section 1255(i), an alien may adjust status if his or her spouse had an application for a labor certification filed on or before April 30, 2001, ***and*** the alien was physically present in the United States on December 21, 2000. 8 U.S.C. § 1255(i)(1)(B), 1255(i)(1)(C). To be eligible as a spouse under this statute, the marriage must have existed at the time the labor certification was filed and the beneficiary spouse must be present in the United

7

States on December 21, 2000. *Valencia v. Lynch*, 811 F.3d 1211, 1215 (9th Cir. 2016). Moreover, an alien who is inadmissible under 8 U.S.C. § 1182(a)(9)(C) is ineligible for section 1255(i) adjustment. *See Matter of Diaz & Lopez*, 25 I. & N. Dec. 188 (BIA 2010); *Matter of Briones*, 24 I. & N. Dec. 355 (BIA 2007).

Assuming, *arguendo*, that Petitioner's wife had a labor certificate filed on or before April 30, 2001, Petitioner did not marry his wife until October 16, 2005, and thus cannot meet the eligibility requirements to adjust pursuant to section 1255(i). Pet. at Ex. A; *see Valencia,* 811 F.3d at 1215. Not to mention the fact that Petitioner's inadmissibility under 8 U.S.C. 1182(a)(9)(C) precludes any eligibility for section 1255(i) adjustment. *See Matter of Diaz & Lopez*, 25 I. & N. Dec. 188; *Matter of Briones*, 24 I. & N. Dec. 355. Therefore, Petitioner's claim that he is eligible for this relief is without merit. In all, Petitioner's argument that his detention and/or removal is depriving him of the ability to "follow the procedures designed by Congress and regulated by DHS" is baseless because these procedures are simply not available to him. Pet. at ¶ 33.

      iii.    <u>Junqueira does not have a due process right to remain in the United States.</u>

As a result, Petitioner does not have a due process right to "regularize his immigration status." Pet. at ¶¶ 27, 33. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005). The claimant must "have a legitimate claim of entitlement to it." *Id.* These entitlements are not created by the Constitution, but by an independent source of law such as a statute. *Id.* Generally, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Clukey v. Town of Camden*, 717 F.3d 52, 56 (1st Cir. 2013); *see also Chun Xin Chi v. Holder*, 606 F.3d 6, 10 (1st Cir. 2010) ("Because an alien has *no* right or entitlement to a reopening, he or she has *no* protected liberty or property interest in that

remedy."); *Juniper v. Ashcroft*, 396 F.3d 487, 492 (1st Cir. 2005) ("Adjustment of status is not an entitlement, but rather, a matter of administrative discretion."). Moreover, it is well settled in this circuit that there is no constitutional right to remain in the United States to pursue an application for adjustment of status. *See Silverman v. Rogers,* 437 F.2d 102, 107 (1st Cir. 1970); *Smith v. I.N.S.,* 684 F. Supp. 1113, 1118 n.2 (D. Mass 1988).

Simply put, Petitioner has no legitimate claim of entitlement to "regularize his immigration status" because he is currently statutorily ineligible to do so. *See Town of Castle Rock*, 545 U.S. at 756; *Zadvydas,* 533 U.S. 678, 701 (2001). His mere desire to do so is insufficient to create a judicially cognizable due process interest. *See id.* Even if he were eligible for any of these forms of relief, such relief is purely discretionary and not subject to due process constraints. *See Juniper*, 396 F.3d at 492. Accordingly, Petitioner's removal would not violate the applicable statutes, regulations, or the Fifth Amendment and the Court should dismiss this claim. *See Silverman,* 437 F.2d at 107.

**C. Junqueira is not detained in violation of the Constitution or the laws or treaties of the United States.**

i. <u>Petitioner's detention is lawful under 8 U.S.C. § 1231(a) and Supreme Court precedent.</u>

To the extent that Junqueira challenges the lawfulness of his immigration detention, this Court has no basis to grant any relief to Petitioner because his detention is lawful under 8 U.S.C. § 1231(a) and *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Section 1231(a)(5) authorizes DHS to reinstate a prior final removal order "from its original date" and "the alien shall be removed under the prior order at any time after the re-entry." 8 U.S.C. § 1231(a)(5). Detention pursuant to a final order of removal is presumptively reasonable for six-months, thereby making habeas petitions filed prior to the six-month mark unripe for adjudication. *Zadvydas,* 533 U.S. at 701;

*Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (holding that the "six-month period . . . must have expired at the time [the petitioner's] § 2241 petition was filed in order to state a claim under *Zadvydas*"); *accord Hodel v. Aguirre*, 260 F. Supp. 2d 695, 699 (N.D. Ill. 2003) (*Zadvydas* not implicated where criminal alien held fewer than six months); *Lamotte v. Holder*, No. CIV.A. 13-10582-RGS, 2013 WL 1629135, at *1-2 (D. Mass. Apr. 9, 2013). After the expiration of the six-month period, if an alien provides good reason to believe that there is *no* significant likelihood of removal in the reasonably foreseeable future ("SLRRFF"), the government must respond with evidence sufficient to rebut that showing. *Zadvydas,* 533 U.S. at 701.

The Supreme Court's analysis in *Zadvydas* is the sole inquiry in cases like Petitioner's. *See Poeuv v. Smith*, 169 F. Supp. 3d 297 (D. Mass. 2016); *Penate-Diaz v. Moniz*, No. 18-10156-NMG, 2018 WL 889217 at *2 (D. Mass. Feb. 12, 2018). Indeed, a habeas court "should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas,* 533 U.S. at 699. Petitioner has been detained for just over two months; therefore, under *Zadvydas*, his detention is presumptively reasonable and his claim should be dismissed. *See Rodriguez-Guardado v. Smith*, 271 F. Supp. 3d 331 (D. Mass. 2017) ("[A]s petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process."); *Lamotte v. Holder*, No. CIV.A. 13-10582-RGS, 2013 WL 1629135, at *1-2 (D. Mass. Apr. 9, 2013); Pet. at ¶ 31.

    ii.   <u>Petitioner is not entitled to a bond hearing because he is subject to a final order of removal.</u>

Additionally, the notion that the government has the obligation to provide Petitioner with a bond hearing in which it has the burden to show by clear and convincing evidence that Petitioner

10

is a flight risk or a danger to the community is without merit on two grounds. First, Petitioner is not entitled to a bond hearing because the properly promulgated regulations do not provide for bond hearings. *See Zadvydas,* 533 U.S. at 702; 8 C.F.R. § 241.8 (providing no right to a bond hearing and that detention of an alien with a reinstated removal order "shall be administered in accordance with this part"); *see also* 8 C.F.R. § 1208.2(c) (aliens in "withholding only" proceedings are not entitled to removal proceedings under 8 U.S.C. § 1229a). Second, even when an alien is entitled to a bond hearing, there is *no burden* on the government to show by clear and convincing evidence that an alien would not pose a flight risk or danger to the community should he or she be released from custody, as Petitioner argues here. *See Jennings, et al. v. Rodriguez, et al.,* 138 S. Ct. 830, 847 (2018) (discussing bond hearings available to aliens in section 1226(a) detention).

    iii.    <u>The Post Order Custody Review regulations do not apply to Petitioner.</u>

As stated above, procedural due process claims concerning post order detention and removal are analyzed solely under the *Zadvydas* framework. Petitioner cannot attempt to skirt around this framework by asserting that Post Order Custody Review ("POCR") regulations apply to him *prior* to any initial detention and *before* he has been detained ninety days. *See* Pet. at ¶ 39 (arguing Petitioner was entitled to the POCR procedures "before or during his detention"). This argument has no merit because the plain language of the regulations states that the POCR regulations do not apply until an alien has been detained for ninety days. *See* 8 C.F.R. § 241.4.

An agency's interpretation of its own regulations is controlling unless it is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). The agency's interpretation is worthy of deference even if the interpretation is "in the form of a legal brief." *Id.* at 462. The purpose of the POCR regulations is to provide alien detainees with

administrative review of their continued detention after they have already been detained for ninety days, otherwise known as the "removal period." *See* 8 C.F.R. § 241.4(a). These regulations apply when ICE decides to exercise its "authority to *continue* an alien in custody" and explain what procedures must be followed when ICE wants to "*continue* an alien in custody beyond the removal period." *Id.* (emphasis added). The regulations provide factors to be considered when deciding whether to "recommend *further* detention or release of detainee" and ICE must give thirty-day "written notice to the *detainee*" of the pending record review. 8 C.F.R. § 241.4(f), (h)(2) (emphasis added). Any "decision to *retain custody*" must be provided to the "detained alien." 8 C.F.R. § 241.4(d) (emphasis added).

ICE interprets these regulations to mean that only aliens currently detained at the expiration of the removal period are entitled to a POCR and that these regulations do not apply to aliens prior to their detention or before the alien has been detained ninety days. Because the agency's interpretation is consistent with the statutory language, it must be given deference. *See Auer*, 519 U.S. at 461. Petitioner's claim that these regulations require that he be given thirty day notice *before* any detention or *before* he has been detained ninety days is contrary to both the regulatory language and the agency's reasonable interpretation. *See* Pet. at ¶ 39. As a result, this Court should dismiss his Petition.

### IV.     CONCLUSION

This Court should dismiss Junqueira's Petition for Writ of Habeas Corpus for lack of subject-matter jurisdiction. Alternatively, this Court should deny the Petition because Junqueira has not established that his detention or removal is in violation of the Constitution or laws or treaties of the United States.

12

DATED: April 6, 2018						Respectfully submitted,

									CHAD READLER
									Acting Assistant Attorney General

									ANDREW E. LELLING
									United States Attorney

									WILLIAM C. PEACHEY
									Director
									Office of Immigration Litigation

									ELIANIS N. PEREZ
									Assistant Director

									*/s/ Mary L. Larakers*.
									MARY L. LARAKERS
									Trial Attorney
									U.S. Department of Justice, Civil Division
									Office of Immigration Litigation,
									District Court Section
									P.O. Box 868, Ben Franklin Station
									Washington, DC 20044
									(202) 353-4419
									(202) 305-7000 (facsimile)
									mary.l.larakers@usdoj.gov

									*/s/ Michael Sady (By MLL)*
									Michael Sady
									Assistant United States Attorney
									United States Attorney's Office
									1 Courthouse Way, Suite 9200
									Boston, MA 02210
									(617) 748-3100
									michael.sady@usdoj.gov

									ATTORNEYS FOR RESPONDENTS

## **PROOF OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Respondents' Opposition to Petition for Writ of Habeas Corpus, Motion to Dismiss, and Memorandum in Support Thereof was electronically served via CM/ECF on the 6th day of April, 2018, to the following counsel of record for the Plaintiff:

Todd C. Pomerleau
Rubin Pomerleau PC
Three Center Plaza, Suite 400
Boston, MA 02108
(617) 367-0077
tcp@rubinpom.com

/s/ *Mary L. Larakers*
MARY L. LARAKERS
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice